# United States Court of Appeals For The Federal Circuit

BASF CORPORATION,

*Plaintiff-Appellant,*

—v.—

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade in Case No. 12-00422, Judge Lisa W. Wang

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

ALEXANDER VANDERWEIDE
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (202) 598-0287
*Attorneys for Defendant-Appellee*

*Of Counsel:*
MICHAEL ANDERSON
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: April 24, 2026

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUE.......................................................................................... 1

STATEMENT OF THE CASE........................................................................................... 2

    I.  Description of Betatene, the Imported Merchandise ........................................... 2

    II. Legal Framework for Tariff Classification................................................................ 3

    III. Prior Proceedings ..................................................................................................... 6

SUMMARY OF ARGUMENT......................................................................................... 8

ARGUMENT ...................................................................................................................... 9

   I.    Standard of Review....................................................................................................... 9

  II.   The Trial Court Properly Considered Whether the Imported Merchandise
        Satisfied All of the Governing Criteria for Goods of HTSUS Heading 2936
        and Correctly Determined that Betatene Is Not Classified as a Provitamin
        Because It Is Particularly Suitable for the Specific Use of Tableting
        Rather Than for General Use ................................................................................... 10

     A. BASF Misconstrues the Legal Criteria for Classifying Merchandise Under
        HTSUS Heading 2936 By Ignoring Explanatory Note 29.36 and *Roche III* ..... 11

     B. BASF Misconstrues Explanatory Note 29.36 By Eliminating Its
        Conjunctive Criteria ............................................................................................ 15

     C. BASF Overlooks Core Differences in Ingredients and Formulations Between
        BetaTab, a General Use Product, and Betatene, a Product Specifically
        Designed and Particularly Suitable for Tableting Only ....................................... 17

 III.   Betatene Is Properly Classified as a Food Preparation of HTSUS
        Heading 2106.......................................................................................................... 22

CONCLUSION ................................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*Al-Site Corp. v. VSI Int'l, Inc.*,
174 F.3d 1308 (Fed. Cir. 1999) ............................................................................... 16

*Aves. In Leather, Inc. v. United States*,
423 F.3d 1326 (Fed. Cir. 2005) ............................................................................ 4, 10

*BASF Corp. v. United States*,
482 F.3d 1324 (Fed. Cir. 2007) ................................................................................ 4

*Degussa Corp. v. United States*,
508 F.3d 1044 (Fed. Cir. 2007) .............................................................................. 15

*Drygel, Inc. v. United States*,
541 F.3d 1129 (Fed.Cir.2008) ................................................................................. 5

*Keer, Maurer Co. v. United States*,
41 Cust. Ct. 38 (1958) ........................................................................................... 21

*Keer, Maurer Co. v. United States*,
46 C.C.P.A. 110 (1959) ......................................................................................... 21

*LeMans Corp. v. United States*,
660 F.3d 1311 (Fed. Cir. 2011) ....................................................................5, 10, 15

*Mondelez Glob. LLC v. United States*,
253 F. Supp. 3d 1329 (Ct. Int'l Trade 2017) ....................................................... 22

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed. Cir. 1998) ........................................................................... 4, 22

*Roche Vitamins, Inc. v. United States*,
772 F.3d 728 (Fed. Cir. 2014) ..........................................................................*passim*

*Roche Vitamins, Inc. v. United States*,
922 F. Supp. 2d 1353 (Ct. Int'l Trade 2013) ....................................................... 19

*Shamrock Bldg. Materials, Inc. v. United States*,
119 F.4th 1346 (Fed. Cir. 2024) ........................................................... 20

*Sigma-Tau HealthScience, Inc. v. United States*,
838 F.3d 1272 (Fed. Cir. 2016) ............................................................... 9

*Victoria's Secret Direct, LLC v. United States*,
769 F.3d 1102 (Fed. Cir. 2014) ............................................................... 9

*W.R. Filbin & Co. v. United States*,
744 F. Supp. 289 (Ct. Int'l Trade 1990)
*aff'd,* 945 F.2d 390 (Fed. Cir. 1991) ................................................20, 21

**Harmonized Tariff Schedule of the United States**

Chapter 21

Heading 2106 ..............................................................................*passim*

Subheading 2106.90.99 ............................................................... 4

Chapter 29

Heading 2936 ..............................................................................*passim*

Subheading 2936.90.01 ............................................................... 4

Note 1...........................................................................................11, 17

Note 1(f) .....................................................................................*passim*

Explanatory Note 29.36 ............................................................*passim*

**Other Authorities**
Miscible, *Merriam-Webster Dictionary*
available at https://www.merriam-webster.com/dictionary/miscible ........................ 19

## STATEMENT PURSUANT TO RULE 47.5

In accordance with Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for defendant-appellee makes the following statements:

(1) No other appeal in or from the same civil action or proceeding in the United States Court of International Trade was previously before this or any other appellate court.

(2) Counsel for defendant-appellee is unaware of any other currently pending case in this or any other court that may be directly affected pending the Court's decision in this appeal.

2026-1056

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

BASF CORPOATION,
*Plaintiff-Appellant*

v.

UNITED STATES,
*Defendant-Appellee*

———————————————————

Appeal from the United States Court of International Trade
in case no. 12-00422, Judge Lisa W. Wang

———————————————————

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

## STATEMENT OF THE ISSUE

This case concerns the tariff classification of Betatene 7.5% N (Betatene), a product imported by plaintiff-appellant, BASF Corporation (BASF), and formulated from beta-carotene, a naturally occurring colorant with provitamin A activity known for giving carrots their characteristic orange color. Commercially, beta-carotene can be formulated into a range of products with different applications, from coloring foods, beverages and cosmetics, to fortifying foods and beverages with provitamin A, and to serving as an ingredient in dietary supplements. Some beta-carotene-based

products are multi-purpose; others, like Betatene, are specifically designed for one kind of use only, to wit, as a dietary supplement ingredient in tablets.

As established by a controlling chapter note of the tariff statute and its interpretative guidance, including this Court's direct precedent, to be classified as a provitamin, beta-carotene formulated products must not have more stabilizers than necessary for their preservation or transport, and the added stabilizers and manufacturing process must not alter the character of the beta-carotene and render it particularly suitable for specific use rather than general use.

The issue in this case is whether the United States Court of International Trade, when applying this criterion to Betatene, correctly determined that Betatene is not classified as a provitamin because it is particularly suitable for the specific use of tableting, rather than for general use.

## STATEMENT OF THE CASE

### I. Description of Betatene, the Imported Merchandise

Betatene is a formulated product consisting of "beta-carotene, soybean oil, gelatin, sucrose, ascorbyl palmitate, tocopherols, and silicon dioxide." Appx009. The beta-carotene in Betatene is derived from the alga <u>Dunaliella salina</u>. Appx003.

Betatene's manufacturing process begins in Australia where the alga is grown and harvested, and the beta-carotene is extracted and dissolved in soybean oil,

"resulting in a concentrated oily dispersion consisting of approximately 30 percent beta-carotene particles and 70 percent oil." Appx003 (internal quotation marks omitted). This 30/70 beta-carotene/oil dispersion is shipped to Japan where it is microencapsulated, which entails mixing the dispersion with additional ingredients, Appx004, and enrobing it in a "protective matrix of gelatin and sucrose" that embeds and combines the "oily beta-carotene and antioxidant droplets" into "solid beadlets." Appx017 (internal quotation marks omitted).

Microencapsulation, an expensive process, "provides stabilization, emulsification, and mechanical strength for tableting." Appx005 (internal quotation marked omitted). Once microencapsulated, the gelatin-sucrose matrix prevents the beadlets from cracking due to the direct compression of the tableting machine, and the finished product contains at least 7.5 percent beta-carotene by weight. *Id.* BASF markets Betatene as "a provitamin A source in vitamin and dietary supplement tablets and hard capsules." *Id.*

## II. Legal Framework for Tariff Classification

Merchandise imported into the United States is classified under the Harmonized Tariff Schedule of the United States (HTSUS). The tariff classification of merchandise under the HTSUS is governed by the principles set forth in the General Rules of Interpretation (GRIs) and the Additional U.S. Rules of

Interpretation. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998); *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007).

GRI 1 provides, in relevant part, that "for legal purposes, classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes and, provided such headings or Notes do not otherwise require, according to the [remaining GRIs.]" The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law. *Aves. In Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (internal quotation marks omitted).

U.S. Customs and Border Protection (CBP) classified the imported Betatene under subheading 2106.90.99, HTSUS (2011 and 2012), which provides for: "Food preparations not elsewhere specified or included: Other: Other: Other: Other: Other: Other."

BASF contends that Betatene is classifiable under subheading 2936.90.01, HTSUS (2011 and 2012), which provides for:

> Provitamins and vitamins, natural or reproduced by synthesis (including natural concentrates), derivatives thereof used primarily as vitamins, and intermixtures of the foregoing, whether or not in any solvent: Other, including provitamins and natural concentrates.

HTSUS Chapter 29, Note 1(f) places certain restrictions on additives that can be included in products under the headings of Chapter 29, namely that any "added

4

stabilizer[s] (including an anticaking agent)" are to be "necessary for their preservation or transport." In *Roche Vitamins, Inc. v. United States*, 772 F.3d 728, 732 (Fed. Cir. 2014) (*Roche III*), which concerned the classification of BetaTab, a beta-carotene formulated product, this Court explained that "Note 1(f) to Chapter 29 permits the addition of stabilizer ingredients to BetaTab, as long as the amount of stabilizer added is not more than necessary for preservation or transport."

Explanatory Note 29.36 (E.N. 29.36) of the Harmonized Commodity Description and Coding System provides additional guidance for goods classifiable in heading 2936, HTSUS. The "Explanatory Notes that accompany each Chapter of the HTSUS, while not legally binding, are 'persuasive' and are 'generally indicative' of the proper interpretation of the tariff provision." *LeMans Corp. v. United States*, 660 F.3d 1311, 1316 (Fed. Cir. 2011) (quoting *Drygel, Inc. v. United States*, 541 F.3d 1129, 1134 (Fed.Cir.2008).

Relevant here, E.N. 29.36 provides that:

> The products of this heading may be stabilised for the purposes of preservation or transport:
>
> - by adding anti-oxidants,
>
> - by adding anti-caking agents (e.g. carbohydrates),
>
> - by coating with appropriate substance (e.g. gelatin, waxes or fats), whether or not plasticized, or

- by adsorbing on appropriate substances (e.g., silicic acid),

> **provided** that the quantity added or the processing in no case exceeds that necessary for their preservation or transport and that the addition or processing does not alter the character of the basic product and render it particularly suitable for specific use rather than for general use.

As explained by the Court in *Roche III,* 772 F.3d at 732, "Explanatory Note 29.36 expands on Note 1(f) to Chapter 29 and permits the addition of stabilizer ingredients if the addition or processing does not (1) alter the character of the basic product and (2) render it particularly suitable for specific use rather than for general use."

### III. Prior Proceedings

The trial court held that Betatene is properly classified as a food preparation under HTSUS heading 2106. In reaching its decision, the court first considered whether Betatene was classified in HTSUS heading 2936 because "[f]or a beta-carotene product to be classifiable under heading 2106, it must 'not [be] elsewhere specified or included.'" Appx010. After reviewing the relevant Chapter and Explanatory Note, and this Court's analysis in *Roche III*, the trial court stated that "the proper classification of Betatene turns on whether it satisfies the limitations of note 1(f) to chapter 29 and EN 29.36." Appx012. The court framed and considered those limitations as follows:

6

1. Betatene must not have more stabilizers than necessary for preservation or transport;

2. The addition of stabilizer ingredients and the manufacturing process must not alter the character of Betatene as a beta-carotene product; and

3. The addition of stabilizer ingredients and the manufacturing process must not render Betatene particularly suitable for specific use rather than for general use.

Appx013.

With respect to the first limitation, the court found there was insufficient evidence to "establish that the stabilizing ingredients added to Betatene exist in quantities greater than necessary for stabilization or transport." Appx014. As for the second limitation, the court concluded that "[t]he addition of stabilizer ingredients and Betatene's manufacturing process satisfy the first limitation of EN 29.36 and do not alter the character of the beta-carotene or Betatene's ability to function as provitamin A." Appx016. For the third limitation, the court determined "that the processing and ingredients incorporated into Betatene, particularly the process of microencapsulation, renders Betatene particularly suitable for the specific use of tableting." Appx019. Moreover, the court found that "Betatene is not suitable for general use after microencapsulation" because "Betatene's suitability for uses other

than tableting requires it to be de-formulated from its microencapsulated beadlet, which is not commercially or functionally viable." Appx020.

Consequently, the court ruled that BASF failed to satisfy its burden that Betatene is classifiable under HTSUS heading 2936. Appx021. Instead, the court held that Betatene was correctly classified in HTSUS heading 2106 as the imported product is a "food" and a "preparation" that is not elsewhere specified or included. Appx021-022. BASF appealed the trial court's decision.

## SUMMARY OF ARGUMENT

This Court should affirm the trial court's judgment that Betatene is not classified as a provitamin of HTSUS heading 2936. In accordance with the governing framework for goods classifiable in HTSUS heading 2936, as set forth by Note 1(f) to Chapter 29, E.N. 29.36, and *Roche III*, the trial court correctly determined that the additional stabilizers and processing required to formulate beta-carotene into Betatene rendered the product particularly suitable for the specific use of tableting, rather for general use applications.

BASF's arguments that Betatene is *prima facie* classifiable under HTSUS heading 2936 and that the trial court misconstrued E.N. 29.36 ignore the controlling standard that both *Roche III* and E.N. 29.36 set for goods classifiable as provitamins, including E.N. 29.36's conjunctive criteria. Moreover, BASF's attempts to analogize Betatene

8

to the BetaTab in *Roche III* fall short, as BetaTab contains no oil and is water

dispersible, making it readily conducive to applications other than tableting.  In

contrast, microencapsulating the beta-carotene into oily beadlets renders Betatene

only suitable for use in tableting, as it would not be cost-effective and commercially

feasible or desirable to render Betatene into general use applications.

Because Betatene is not classifiable in HTSUS heading 2936 as a provitamin, or

any other HTSUS heading, it is properly classified, as the trial court concluded, in

HTSUS heading 2106 as a food preparation.

Accordingly, we respectfully ask this Court to affirm the judgment of the trial

court classifying Betatene in HTSUS heading 2106.

## **ARGUMENT**

### I.     **Standard of Review**

This Court reviews a classification decision in two steps.  First, the Court

ascertains the meaning of the applicable tariff terms, which is a question of law that

this Court reviews *de novo*.  *Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272,

1276 (Fed. Cir. 2016).  The Court then assesses whether the trial court correctly

determined that a particular imported product falls within the tariff terms at issue,

which is a question of fact reviewed for clear error.  *Victoria's Secret Direct, LLC v.

United States,* 769 F.3d 1102, 1106 (Fed. Cir. 2014).

**II.** **The Trial Court Properly Considered Whether the Imported Merchandise Satisfied All of the Governing Criteria for Goods of HTSUS Heading 2936 and Correctly Determined that Betatene Is Not Classified as a Provitamin Because It Is Particularly Suitable for the Specific Use of Tableting Rather Than for General Use**

The trial court properly rejected HTSUS heading 2936 as the appropriate provision for the classification of Betatene. It did so after considering whether Betatene has more stabilizers than necessary for its preservation or transport, and whether Betatene's added stabilizers and manufacturing process altered its character as a beta-carotene product and rendered it particularly suitable for specific rather than general use. Appx013. For goods classifiable in HTSUS heading 2936 this criterion is neither new nor controversial, as it restates the requirements mandated by Chapter 29, Note 1(f), a controlling chapter note, *Aves. In Leather, Inc.*, 423 F.3d at 1333 (section and chapter notes have the force of statutory law), and the interpretive guidance set forth by E.N. 29.36 and this Court's decision in *Roche III*. *See LeMans Corp.*, 660 F.3d at 1316 ("Explanatory Notes that accompany each Chapter of the HTSUS, while not legally binding, are 'persuasive' and are 'generally indicative' of the proper interpretation of the tariff provision.") (citations omitted). After considering each of the required criteria, as applied to Betatene, the trial court correctly determined that Betatene could not be classified in HTSUS heading 2936 as a provitamin because it is particularly suitable for tableting and not for general use.

10

BASF challenges the trial court's analysis and decision, and in so doing, advances a series of arguments in support of its preferred tariff classification: (1) that HTSUS heading 2936 should be interpreted only in accordance with its terms and Note 1(f) to Chapter 29, and no guidance should be taken from E.N. 29.36; (2) that the trial court misconstrued and misapplied E.N. 29.36; and (3) that Betatene undergoes processing and possesses ingredients similar to the BetaTab in *Roche III*, and like BetaTab, is able to function as a source of provitamin A in applications other than tablets.  Blue Br. 22-28.  All are unavailing, as we explain below.

### A. BASF Misconstrues the Legal Criteria for Classifying Merchandise Under HTSUS Heading 2936 By Ignoring Explanatory Note 29.36 and *Roche III*

BASF contends that "Betatene falls squarely within the terms of heading 2936 and Chapter 29, Note 1(f)," Blue Br. 22, and thus Betatene is *prima facie* classifiable in HTSUS heading 2936, which precludes its classification under HTSUS heading 2106.  Blue Br. 22-23, Blue Br. 36-40.  In BASF's estimation, to be *prima facie* covered by heading HTSUS heading 2936, "Betatene must be, in pertinent part, 1) a provitamin or vitamin; 2) of natural or synthetic origin; 3) either in, or not in, a solvent, and 4) formulated in a manner consistent with Chapter 29, Note 1."  Blue Br. 38.

BASF's reductive test for products falling under HTSUS heading 2936 neglects to include any discussion of E.N. 29.36 and *Roche III* and the bearing of those

11

authorities on products classified as provitamins under the heading. That Betatene is a beta-carotene formulation is insufficient in and of itself to *prima facie* classify the product in HTSUS heading 2936 as provitamin A. The product must also not exceed the limitations for added stabilizer ingredients, as specified in Note 1(f) to Chapter 29, a controlling chapter note.

But what do those limitations entail? E.N. 29.36 and *Roche III* illuminate the required criteria. In accordance with Note 1(f) to Chapter 29 and as articulated by the Court in *Roche III*, the formulation of a beta-carotene product must not include stabilizers in quantities that are more than necessary to preserve or transport the product. *Roche III*, 772 F.3d at 732. E.N. 29.36 and *Roche III* further explain that when adding or processing the stabilizers, these operations must not "alter the character of the basic product"—here, beta-carotene—and render it "particularly suitable for specific use than for general use." *Id.*

The trial court distilled this governing criterion, as applied to Betatene, into the following three prongs:

1. Betatene must not have more stabilizers than necessary for preservation or transport;

2. The addition of stabilizer ingredients and the manufacturing process must not alter the character of Betatene as a beta-carotene product; and

12

> 3. The addition of stabilizer ingredients and the manufacturing process must not render Betatene particularly suitable for specific use rather than for general use.[1]

Appx013.

As to the first and second criteria, the trial court found that Betatene does not contain stabilizing ingredients in quantities greater than necessary for its preservation or transport, and that the addition and processing of these ingredients do not alter the character or functionality of Betatene as provitamin A. Appx014-016. BASF believes that the trial court's analysis should end here: "Thus, if Betatene's protective matrix is a stabilizer necessary for preserving or transporting the beta-carotone in the Betatene product, then Note 1(f) is satisfied." Blue Br. 39. "At this point, the trial court had described a product provided for by both the *eo nomine* statutory language of heading 2936 and by Chapter 29, Note 1(f)." *Id.* Not so.

---

[1] BASF contends that the trial court misstated the requirements, Blue Br. 45, n. 5, when it considered the impact of adding and processing the stabilizers on the character and uses of *Betatene*, as opposed to the character and uses of *beta-carotene*. Yet BASF does not make any argument that the trial court's misstatement constitutes reversible error. Nor does the trial court's conflation of Betatene with beta-carotene as the "basic product" constitute a meaningful difference when considering the suitability of the basic product's uses. Once fully processed into Betatene, the specific and general uses, if any, of the basic product, beta-carotene, are inextricable from the specific and general uses, if any, of Betatene.

Even though the trial court sided with BASF's position on these two prongs of the required analysis, the trial court also went on to consider, as it must, the remainder of the criteria, to wit, whether the addition of the stabilizers and Betatene's processing rendered it particularly suitable for specific use rather than for general use. On that score, the trial court found that Betatene is particularly suitable for tableting, a specific use, and is not suitable for general use. As such, the trial court correctly determined that Betatene exceeded the limitations for added stabilizer ingredients, as mandated by Note 1(f) to Chapter 29 and as guided by E.N. 29.36 and *Roche III*. Consequently, the imported product is not classifiable in heading HTSUS 2936, whether *prima facie* or otherwise.

BASF, however, takes issue with the trial court "incorporating nonbinding *EN 29.36* as a requirement for classification under heading 2936 and Chapter 29, Note 1(f)." Blue Br. 41, n. 4. But this position ignores *Roche III*, 772 F.3d at 731, in which this Court determined that "[t]he Explanatory Notes for HTSUS Chapter 29 provide further insight as to the proper classification of merchandise under heading 2936," and that the "Explanatory Notes are not legally binding, but may be consulted for guidance and are generally indicative of the proper interpretation of a tariff provision." The *Roche III* Court then considered that guidance when classifying BetaTab, just like the trial court did in this action with Betatene. Courts routinely

14

consult the Explanatory Notes to define or clarify language in the tariff, even if that definition or clarification creates a reticulated standard. *See, e.g.*, *Roche III*, 772 F.3d at 731; *Degussa Corp. v. United States*, 508 F.3d 1044, 1048 (Fed. Cir. 2007); *LeMans Corp.*, 660 F.3d at 1320-22. BASF's quibble over the substantive legal standard here is both foreclosed by binding precedent and unpersuasive.

### B. BASF Misconstrues Explanatory Note 29.36 By Eliminating Its Conjunctive Criteria

Despite its misgivings regarding the applicability of E.N. 29.36, BASF nevertheless maintains that the trial court misconstrued the requirements of the Explanatory Note. Blue Br. 44-47. In particular, BASF contends that the trial court "delinked and eliminated the causal relationship set out in *EN 29.36*, and set out each condition as an independent requirement that needed to be satisfied." Blue Br. 45. It is thus BASF's position that "because the character of the beta carotene as provitamin A was not changed, no change in character exists that could render the beta carotene particularly suitable for a specific use." Blue Br. 47.

BASF offers no support for this argument. BASF cites to no case law or other authority for the proposition that an "and" between two criteria means that the latter prong of the criteria need not be applied and considered if the former prong of the criteria is satisfied.

15

Nor is BASF's argument correct. E.N. 29.36's criteria are written in the conjunctive, which means that Betatene must satisfy *all* of the Explanatory Note's criteria—not that it need only satisfy one prong of the criteria. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1326 (Fed. Cir. 1999) ("Because this is a conjunctive test, failure to prove even one of these elements precludes a showing of [liability]."). Indeed, even after the *Roche III* Court found that the additional ingredients and processing do not alter the character of the beta-carotene in the BetaTab, the Court went on in detail to consider whether such rendered the beta-carotene particularly suitable for a specific use rather than for general use. 772 F.3d at 732-33. Presumably, if the *Roche III* Court agreed with BASF's curtailed construction of the E.N. 29.36 criteria it would have dispensed with conducting this prong of its analysis.

Moreover, despite BASF's thoughts to the contrary, one can readily conclude, as the trial court did, that when formulating the basic product into Betatene, the character of beta-carotene as a provitamin may not have changed—after all, beta-carotene is always provitamin A—but the potential uses of beta-carotene in the formulated Betatene, such as its ability to impart color and to be dispersed in food and beverages have in fact changed. The trial court considered the character of the beta-carotene in Betatene as a provitamin and its use as two different attributes, and

16

thus in accordance with E.N. 29.36 and *Roche III*, different prongs when considering whether a formulated beta-carotene product is classifiable in HTSUS heading 2936.

C.   **BASF Overlooks Core Differences in Ingredients and Formulations Between BetaTab, a General Use Product, and Betatene, a Product Specifically Designed and Particularly Suitable for Tableting Only**

In *Roche III*, this Court found that the addition of the stabilizer ingredients in BetaTab did not render it particularly suitable for specific use rather than for general use.  772 F.3d at 733.  BASF analogizes Betatene to BetaTab and posits that, like BetaTab, Beatane should be classified as a provitamin of HTSUS heading 2936.  BASF maintains that, like BetaTab, Betatene lacks any tableting excipients, Blue Br. 59, and that "[t]he stabilizing ingredients in Betatene are of the same class or kind of stabilizing ingredients as those used to stabilize the beta carotene in BetaTab."  Blue Br. 51.  BASF also stresses that "both Betatene and BetaTab are microencapsulated beta carotene formulations."  Blue Br. 54.  BASF's efforts to equate Betatene to BetaTab fall short as there are critical differences between the two products.

*First*, the absence of tableting excipients is irrelevant to the specific/general use inquiry mandated by Note 1 to Chapter 29, and as expanded upon by E.N. 29.36 and *Roche III*.  The governing analysis considers whether the addition of *permitted* ingredients like stabilizers and anti-caking agents has rendered the basic product particularly suitable for a specific use as opposed to general use.  *See* E.N. 29.36.

17

Tableting excipients are not ingredients permitted by Note 1 to Chapter 29 in the first place; their presence in a beta-carotene formulation precludes classification under heading 2936, HTSUS, even if they do not render the formulation particularly suitable for tableting.

Regardless, in *Roche III*, the Court found the relevant expert testimony determinative in concluding that BetaTab's gelatin-sucrose matrix did not "specifically prepare [it] for tableting" or render it unsuitable "for general use." 772 F.3d at 732–33 (quotations omitted). Here, however, the undisputed evidence and testimony show that Betatene's oily microencapsulation specifically prepare it for tableting only and render it unsuitable for general use, despite the lack of tableting excipients or the similarity of certain additives to BetaTab. Appx017-020.

With respect to Betatene, the trial court considered the proffered expert testimony and found that prior to microencapsulation, the 30/70 beta-carotene/soybean oil dispersion is not specifically suitable for tableting but can be used as a colorant. Appx017, n. 3. However, after microencapsulation, the gelatin-sucrose matrix embeds the oily dispersion into beadlets with the required strength and durability designed specifically for compression into tablets. Appx017-019. BASF's marketing and product datasheets also confirm that Betatene is "marketed and optimized for tablets." Appx019.

18

Despite both products being microencapsulated, Betatene's beadlets remain enrobed in soybean oil, whereas BetaTab does not contain any oil. *Roche Vitamins, Inc. v. United States*, 922 F. Supp. 2d 1353, 1361 (Ct. Int'l Trade 2013) (*Roche II*); Appx221. Moreover, BetaTab is water miscible, *i.e.*, "capable of being mixed," Merriam-Webster Dictionary at https://www.merriam-webster.com/dictionary/miscible (last visited April 8, 2026), and dispersible at just above room temperature. *Roche II*, 922 F. Supp. 2d at 1361. Which means that BetaTab, despite its intended use in tablets, can suitably be rendered into water-based applications, like effervescent tablets. Betatene, on the other hand, is not water soluble or dispersible, and thus is not suitable for such applications. Appx657-659, Appx665, Appx800, Appx962.

In *Roche III*, the Court concluded that BetaTab can be "used as a source of vitamin A in foods, beverages, and vitamin products," 772 F.3d at 733, and thus remains suitable for general use. For Betatene, however, the trial court concluded otherwise, finding that to be suitable for uses other than tableting, Betatene must be "de-formulated from its microencapsulated beadlet, which is not commercially or functionally viable." Appx020.

Nonetheless, BASF contends that "Betatene can be used as a source of provitamin A in foods, beverages, and vitamins." Blue Br. 61. In purported support, BASF points to various testimony and statements of fact, and maintains that Betatene

can be used as a source of provitamin A in gummy and effervescent vitamin form, in fortified foods, and to color foods. Blue Br. 61-63.

The sources cited by BASF do not support this blanket conclusion. For instance, the Government's designated expert witness, Dr. Stuart Cantor, testified that a hypothetical manufacturer "can do whatever they want" with Betatene, whether that be fortifying foods such as cereal bars and vitamin drinks, or adding it to a vitamin gummy, but doing so would entail the manufacturer offering consumers texturally and visibly off-putting and "funny" tasting products. Appx546-548, Appx991-992. Similarly, while Betatene is not designed or optimized to be used as a colorant, hypothetically it could be if the beadlets were first de-formulated from the processing operations performed in Japan so that the gelatin-sucrose matrix was dissolved; only then could coloration occur. Appx991.

But these hypothetical scenarios are only that, hypothetical, and do not reflect the suitable general uses of the finally formulated Betatene or the feasible commercial reality of deconstructing and utilizing Betatene as anything other than a tablet to be swallowed. *See Shamrock Bldg. Materials, Inc. v. United States*, 119 F.4th 1346, 1353 (Fed. Cir. 2024) (looking to a good's "commercially significant" features to determine its classification). "'Suitable for use' as applied in the Customs law means 'actually, practically, and commercially fit' for such use." *W.R. Filbin & Co. v. United States*, 744

20

F. Supp. 289, 291 (Ct. Int'l Trade 1990) (quotation omitted), *aff'd*, 945 F.2d 390 (Fed. Cir. 1991). "Such suitability does not require that the merchandise be chiefly used for the stated purpose, but it does require more than evidence of a casual, incidental, exceptional, or possible use. There must be a substantial actual use." *Keer, Maurer Co. v. United States*, 46 C.C.P.A. 110, 114 (1959) (cleaned up). That a good "'could' be used" for certain purposes is not enough to establish suitability, particularly where the good in question has been "adapted primarily" for a particular purpose. *Keer, Maurer Co. v. United States*, 41 Cust. Ct. 38, 42 (1958), *aff'd*, 46 C.C.P.A. 110 (1959).

The same is true of Betatene: it "could be used" as a colorant or food additive under commercially unrealistic conditions, but it has been "adapted primarily" for use as a tableting ingredient, *id.*, and there is no evidence of "substantial actual" general use or "actual[], practical[], and commercial[] fit[ness]" for general use, *W.R. Filbin & Co.*, 744 F. Supp. at 291 (quotation omitted). That a manufacturer could *theoretically* de-formulate Betatene, undoing its expensive oily microencapsulation to use it as a colorant or food additive, fails to show that Betatene is *actually* suitable for such uses. It shows just the opposite.

Accordingly, unlike BetaTab, Betatene is not suitable for general use, but rather is suitable only for the specific use of tableting, as the trial court correctly determined. Consequently, Betatene is not classifiable as a provitamin of HTSUS heading 2936.

### III. Betatene Is Properly Classified as a Food Preparation of HTSUS Heading 2106

Having found that Betatene does not satisfy the criteria for provitamins classifiable under HTSUS heading 2936, the trial rightly concluded that Betatene is a food preparation of HTSUS heading 2106.  Appx021.

HTSUS Heading 2106 encompasses "[f]ood preparations not elsewhere specified or included" in the HTSUS.  The trial court determined that Betatene is both a food, as it is a "substance that it is intended to be ingested," and a preparation, as it is "specifically prepared, or made up for its appropriate use or application." Appx021 (quoting *Mondelez Glob. LLC v. United States*, 253 F. Supp. 3d 1329, 1332 (Ct. Int'l Trade 2017)); *see also Orlando Food Corp.*, 140 F.3d at 1441.

Indeed, Betatene fits that description.  It is a substance specifically formulated and intended to be ingested by humans as an ingredient in a dietary supplement. Appx005, Appx021, Appx800.  And when ingested, the body breaks down the merchandise's beta-carotene to obtain vitamin A.  Appx003-004, Appx798.

Betatene is also not "elsewhere specified or included" in the HTSUS.  Heading 2936 does not describe the merchandise for the reasons already explained.  And no other heading might describe a beta-carotene formulation particularly suitable for use in dietary supplements.

As such, Betatene is classifiable under HTSUS heading 2106, as the trial court held.

## **CONCLUSION**

For these reasons, we respectfully request that this Court affirm the judgment of the trial court.

<div style="margin-left:50%">

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

</div>

| Of Counsel: | /s/ Alexander Vanderweide |
|---|---|
| Michael A. Anderson | ALEXANDER VANDERWEIDE |
| Attorney | Senior Trial Counsel |
| International Trade Litigation | Department of Justice, Civil Division |
| U.S. Customs & Border Protection | Commercial Litigation Branch |
| | 26 Federal Plaza, Room 346 |
| | New York, New York 10278 |
| | (202) 598-0287 |
| | Attorneys for Defendant-Appellee |

April 24, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2026 a copy of the foregoing Brief for Defendant-Appellee, United States, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<div align="right">

/s/ Alexander Vanderweide
ALEXANDER VANDERWEIDE
Senior Trial Counsel

</div>

## CERTIFICATE OF COMPLIANCE PURSUANT TO FRAP 32

I, Alexander Vanderweide, a Senior Trial Counsel in the International Trade Field Office of the Department of Justice, who is responsible for the foregoing brief, relying upon the Microsoft Word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under Rule 32(a)(7)(B), and contains 4823 words.

<div align="right">

/s/ Alexander Vanderweide
ALEXANDER VANDERWEIDE
Senior Trial Counsel

</div>